1  JEREMY S. GOLDMAN (SBN 306943)
   MARK R. SWIECH (SBN 311601)
2  **FRANKFURT KURNIT KLEIN & SELZ, P.C.**
   2029 Century Park East, Suite 1060
3  Los Angeles, California 90067
   Telephone: (310) 579-9600
4  Facsimile: (310) 579-9650
   E-Mail:  jgoldman@fkks.com
5           mswiech@fkks.com
6
   Attorneys for Plaintiff COMPLEX MEDIA, INC.
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 COMPLEX MEDIA, INC., a Delaware          ) Case No.
   Corporation,                             )
12                                          ) **COMPLAINT FOR DAMAGES,**
                                            ) **DECLARATORY RELIEF, AND**
13          Plaintiff,                      ) **INJUNCTIVE RELIEF FOR:**
                                            )
14 vs.                                      )
                                            )     (1) **MISREPRESENTATION OF**
15 X17, INC., a California corporation,     )         **COPYRIGHT CLAIMS**
                                            )         **UNDER THE DMCA (17**
16                                          )         **U.S.C. § 512(f))**
            Defendant.                      )     (2) **DECLARATION OF NON-**
17                                          )         **INFRINGEMENT OF**
                                            )         **COPYRIGHT**
18                                          )     (3) **INTENTIONAL**
                                            )         **INTERFERENCE WITH**
19                                          )         **CONTRACTUAL**
                                            )         **RELATIONS**
20                                          )
                                            )
21                                          ) **DEMAND FOR JURY TRIAL**
                                            )
22 ─────────────────────────────────────────

23 ///

24 ///

25

26

27

28

─────────────────────────────────────────────
                    COMPLAINT

Plaintiff Complex Media, Inc. ("Complex") hereby complains against defendant X17, Inc. ("X17") as follows:

## NATURE OF THE ACTION

1.      Complex is a media organization that publishes news reports through its website and online platforms such as YouTube.  X17, which claims to own and license photographs and video footage of celebrities, accuses Complex of infringing X17's copyrights in certain materials used in Complex's news reports.  Although Complex denies that it engaged in any infringing conduct, Complex was in the process of negotiating an amicable resolution of X17's claims when X17 stepped over the line.

2.      Beginning on or about August 15, 2018, X17 began filing a slew of Digital Millennium Copyright Act ("DMCA") takedown notices with YouTube asserting that certain news reports posted to Complex's YouTube channel (the "Channel") infringe X17's copyrights.  In filing these takedown notices, X17 knowingly materially misrepresented that the news reports were infringing because X17 cannot prove copyright ownership of any material used in the news reports and, even if it can, the news reports make fair use of any such materials.  X17 filed the DMCA notices in a bad faith attempt to exert pressure on Complex in the ongoing negotiation between the parties.

3.      X17's misrepresentations resulted in YouTube placing "copyright strikes" on Complex's account, which has frozen Complex's ability to post new videos and edit existing content on its Channel and has threatened the permanent deactivation of Complex's YouTube account.  These actions have already inflicted significant and irreparable damage upon Complex and, unless stopped, threaten to cause catastrophic harm to Complex's business.

4.      Through this lawsuit, Complex seeks redress pursuant to 17 U.S.C. § 512(f) for the damage caused by X17's malicious abuse of the DMCA takedown process; a declaration that the videos at issue are non-infringing; damages for X17's tortious interference with Complex's contract with YouTube; and an injunction prohibiting X17 from filing further baseless DMCA takedown notices against Complex.

## PARTIES

5.     Complex is a Delaware corporation with its principal place of business in New York, New York.  Complex produces news content and commentary in written and video format and distributes its work via multiple distribution means, including the YouTube Channel.[1]

6.     Upon information and belief, X17 is a California corporation with its principal place of business in Pacific Palisades, California.

## JURISDICTION AND VENUE

7.     This Court has exclusive subject matter jurisdiction over the copyright and declaratory judgment aspects of this action under 28 U.S.C. §§ 1331 and 1338 because federal courts have exclusive jurisdiction over copyright cases, and because those claims are federal questions.

8.     This Court has supplemental jurisdiction over the California state law claim under 28 U.S.C. § 1367(a) because it is so related to the claims asserted in the action under federal law that it forms part of the same case or controversy under Article III of the U.S. Constitution.

9.     This Court has personal jurisdiction over X17 because, on information and belief, X17's principal place of business is in Pacific Palisades, California; X17 transacts business in the State of California; X17 has engaged in actionable conduct within the State of California; and X17 maintains agents in the State of California.  The causes of action stated herein arise out of X17's transactions and business within the State of California.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because X17 regularly conducts business in this district, and a substantial part of the events giving rise to this action occurred in this district.

---

[1] *See Complex News*, YouTube.com, https://www.youtube.com/user/Complexmagazine.

## FACTS COMMON TO ALL CLAIMS

***Complex***

11.   Complex is a modern-day creator, producer, distributor, and publisher of news content and commentary.  Complex reports not only on current national news events,[2] but also on trends in style, pop culture, music, sports, and sneakers, leading one commentator to recognize Complex as "a sort of next generation MTV News[.]"[3]

12.   Complex's content includes written articles,[4] original shows,[5] and standalone videos covering, commenting on, and discussing current events in news and popular culture.

13.   Complex distributes, publishes, and makes its news content and commentary available through a variety of means, including its website, "www.complex.com," third party platforms such as Roku and Apple TV, and online video streaming services such as YouTube.

14.   Complex's YouTube Channel is one of the company's primary distribution platforms.  The Channel has over 2.4 million subscribers, hosts over 12,000 of Complex's videos, and earns Complex hundreds of thousands of dollars per year.

---

[2] *See, e.g.*, Tara Mahadevan, *Parkland Survivors Call Out Florida Politicians Following Jacksonville Shooting*, Complex.com (Aug. 26, 2018), https://www.complex.com/life/2018/08/parkland-survivors-call-out-florida-politicians-following-jacksonville-shooting.

[3] *See* Todd Spangler, *Complex Media Expands to Give Dudes Their Due*, Variety (Dec. 6, 2013 8:30 AM), https://variety.com/2013/biz/news/complex-media-expands-to-give-dudes-their-due-1200923355/.

[4] *See, e.g.*, Mahadevan, *supra* note 2; Joshua Espinoza, *XXXTentacion's Estate Drops "17" One-Year Anniversary Collection*, Complex.com (Aug. 25, 2018), https://www.complex.com/style/2018/08/xxxtentacion-17-album-anniversary-collection.

[5] *See All Shows*, Complex.com, https://www.complex.com/video/.

---

***YouTube Channels***

15.    YouTube, owned by Google, Inc., is a video hosting platform where users upload and publish video content.  YouTube generates revenue by embedding advertising in and around the videos hosted on its platform.

16.    A YouTube "channel" is the "home page" for a specific YouTube account. All of the videos that a particular user uploads appear on that user's channel.  Both individuals and businesses can create YouTube accounts and have their own channels.

17.    YouTube allows users with successful YouTube channels to monetize their videos through YouTube's "Partner Program," which pays users a share of the advertising revenue generated through their videos.  Channels with 1,000 subscribers and 4,000 "watch hours" in the preceding 12 months are eligible to participate in the Partner Program.[6]  Once a channel is accepted, the user can begin to monetize the videos hosted on the channel by enabling the "Monetization" feature on the channel and accepting the terms of YouTube's Content License Agreement (the "CLA").

18.    Complex is a party to YouTube's CLA and Complex's participation in the Partner Program through its YouTube Channel earns the company tens of thousands of dollars per month in revenue.

***YouTube's "Copyright Strike" System***

19.    To qualify for the safe harbor extended to Internet service providers under the DMCA, YouTube is required to adopt a repeat infringer policy.[7]  YouTube's repeat infringer policy involves a system of "copyright strikes."  Under this system, when a copyright owner sends YouTube "a complete and valid legal request"—*i.e.*, a DMCA takedown notice—asking YouTube to remove allegedly infringing content from its

---

[6] *See YouTube Partner Program Overview*, https://support.google.com/youtube/answer/72851#eligibility.

[7] 17 U.S.C. § 512(i)(1)(A).

platform, YouTube places a "copyright strike" on the account of the allegedly infringing user and removes the target video from YouTube.[8]

20. While YouTube describes a copyright strike as a "warning" to the user, YouTube also makes clear that accumulating copyright strikes "may affect [a user's] ability to monetize" the user's content.[9]

21. A users who receives a copyright strike may attempt to resolve the strike by: (1) completing YouTube's "copyright school" and waiting 90 days for the strike to expire; (2) asking the copyright owner to retract the claim of copyright infringement; or (3) submitting a DMCA counter notification to the copyright owner.[10]

22. If a user receives three copyright strikes, the user's YouTube account, "along with any associated channels, is subject to termination[,]" "all the videos uploaded to [the] account will be removed[,]" and the user "won't be able to create new channels."[11]

### X17's Abuse Of The DMCA And YouTube's Copyright Strike System

23. Beginning on or about August 15, 2018, X17, itself an active user and channel operator on YouTube, commenced a concerted campaign designed to inflict maximal damage upon Complex by abusing the DMCA and YouTube's copyright strike system.

24. In the course of approximately two weeks, while Complex and X17 were engaged in discussions to resolve certain contested infringement claims X17 asserted against Complex, X17 filed at least six DMCA takedown notices targeted at videos

---

[8] *See Copyright Strike Basics*, https://support.google.com/youtube/answer/2814000?hl=en.

[9] *Id.*

[10] *Id.*

[11] *Id.*

Complex posted to its Channel.  While Complex promptly disabled one of the videos upon receiving X17's notice, the other five videos are not infringing and X17 knows it.

25.    Despite repeated demands, X17 has been unwilling or unable to produce any evidence to substantiate its claim that X17 owns the copyright in any of the content used in Complex's videos.  But even if X17 can establish copyright ownership, Complex's use of the content constitutes non-infringing fair use under section 107 of the Copyright Act.

26.    On information and belief, X17 filed the DMCA notices not because of a genuine belief that Complex's use was infringing, but as a bad faith negotiation tactic to force Complex to pay an unreasonable "licensing fee," knowing full well that X17's flurry of takedown notices would cause Complex to "strike out" under YouTube's repeat infringer policy — a result that X17 understands would have devastating financial consequences for Complex.

27.    None of the five videos targeted by X17 are infringing because, upon information and belief, X17 cannot establish that it owns any of the allegedly infringing material, and because Complex's use of any such material is fair use.  However, two of the videos are so quintessentially fair use that the only explanation for X17's issuance of the takedown notices related to those videos is that X17 knowingly and materially misrepresented to YouTube that Complex's material was infringing.

### *The Kanye Deposition Report*

28.    On or about July 19, 2013, Kanye West got into a fight with a photographer outside of Los Angeles International Airport ("LAX").  This incident was heavily photographed and videotaped and lead to a lawsuit by the photographer in which Mr. West was eventually deposed.

29.    Over a year after the LAX incident, on August 6, 2014, Complex posted a written article on its website reporting on a portion of the deposition transcript obtained by another news organization.[12]  The article commented on the transcript's discussion of

---

[12] *See* Zach Frydenlund, *Here's a Sneak Peek of Kanye West's Deposition From His 2013 Paparazzi Case*, Complex.com (Aug. 6, 2014),

paparazzi tactics and embedded a video, hosted on Complex's YouTube Channel, titled "Sneak Peek of Kanye's Deposition from 2013 Paparazzi Case" (the "Kanye Deposition Report").

30.    The Kanye Deposition Report is a two minute and twenty-one second news report that discusses and comments on Mr. West's fight at LAX, the lawsuit it spawned, and the deposition transcript.  The Kanye Deposition Report offers context for the entire incident by comparing it to another celebrity's reaction to the same photographer's tactics as well as other celebrities' behavior during their own depositions.

31.    The Kanye Deposition Report includes a 13-second clip of Mr. West's altercation at LAX with the photographer (the "LAX Clip").  Upon information and belief, X17 claims Complex's use of the LAX Clip in the Kanye Deposition Report infringes X17's rights in the much longer (five minutes, eighteen seconds) video footage of the LAX incident hosted on X17's YouTube channel (the "LAX Footage").

32.    However, Complex's use of the LAX Clip in the Kanye Deposition Report is classic fair use.  The Kanye Deposition Report is news reporting and commentary. Complex's use of the LAX Clip is transformative because it provides an historical reference point for a news report not about the incident, but about the lawsuit and Mr. West's deposition.  X17 had already published the LAX Footage, which is of a factual, not creative nature.  Complex used only 13 seconds of the LAX Footage: just enough to conjure up the incident that was being referenced in the broader news report.

33.    Notwithstanding that Complex's limited use of the LAX Footage was protected fair use under section 107 of the Copyright Act, on or about August 16, 2018— over four years after Complex published the Kanye Deposition Report—X17 filed a takedown notice against Complex with YouTube, claiming that the Kanye Deposition Report was infringing.

---

https://www.complex.com/music/2014/08/heres-a-sneak-peek-of-kanye-wests-deposition-from-his-2013-paparazzi-case.

34.    YouTube disabled access to the Kanye Deposition Report on the same day Complex received the DMCA takedown notice and notified Complex that its account had two copyright strikes.[13]

### *The North West Paparazzi Report*

35.    On October 28, 2015, X17 published video footage of North West, the infant daughter of Kanye West and Kim Kardashian, wearing a pink tutu and walking with her caretaker across a parking lot to her ballet class, where she is surrounded by photographers (the "North West Footage").  North West says "I said no pictures" as she walks by, but the photographers continue to follow her and take pictures and video footage.

36.    Later that day, Complex published on its YouTube Channel a one minute and twenty-nine second news report commenting on and criticizing the aggressive tactics of the photographers who followed North West (the "North West Paparazzi Report").

37.    The North West Paparazzi Report includes a 12-second clip of the North West Footage (the "North West Clip").  Upon information and belief, X17 claims Complex's use of the North West Clip in the North West Paparazzi Report infringes X17's rights in the much longer (fifty seconds) North West Footage.

38.    However, Complex's use of the North West Clip in the North West Paparazzi Report is also classic fair use.  The North West Paparazzi Report is news reporting and commentary.  Complex's use of the North West Clip is highly transformative because the North West Paparazzi Report does not merely repackage the original North West Footage, but rather sheds new light on the material by providing *commentary* on, and *criticism* of, the North West Footage.  After playing the North West Clip, Complex's reporter comments that while North West's reaction was "adorable," it was "also really kind of sad."  The reporter continues: "A two year-old should not need to know how to say 'I said no pictures' and clearly those paps didn't listen because clearly

---

[13] Complex received its first strike on August 15, 2018 with respect to a video report on Justin Bieber that Complex promptly deleted.

Case 2:18-cv-07588-SJO-AGR   Document 1   Filed 08/30/18   Page 10 of 17   Page ID #:10

there's a giant camera in her face.  It's an interesting thing to think about.  North West will literally never have a normal life."  The reporter then comments about the trade-offs fame and fortune provide celebrities, asking "at what cost" do these things come.  The report concludes the segment by asking viewers if they "think that North's inability to go anywhere as a toddler without photographers is just the cost of a luxurious life, or should we let the girl go to ballet class in peace?"

39.    Moreover, X17 had already published the North West Footage, which is of a factual, not creative nature.  Complex used only 12 seconds of the North West Footage: just enough to conjure up the incident on which Complex was commenting in the broader news report.

40.    Notwithstanding that Complex's limited use of the North West Footage was protected fair use under section 107 of the Copyright Act, on or about August 22, 2018—almost three years after Complex published the North West Paparazzi Report—X17 filed a takedown notice against Complex with YouTube, claiming that the North West Paparazzi Report was infringing.

41.    YouTube disabled access to the North West Paparazzi Report on the same day Complex received the DMCA takedown notice and notified Complex that its account had four copyright strikes.[14]

42.    Pursuant to YouTube's copyright strike policy, YouTube also notified Complex that, because Complex now had more than three copyright strikes, its "account [was] scheduled to be disabled in 7 days."

***Complex Has Been Damaged As A Result Of X17's Conduct***

43.    As a direct and proximate result of X17's conduct, YouTube has disabled Complex's ability to upload any new content to the Channel since at least August 16,

---

[14] Complex received a third copyright strike on August 16, 2018—the same day Complex received its second strike for the Kanye Deposition Report discussed *supra*—as a result of X17 filing another DCMA takedown notice with YouTube against Complex for another video.  Complex filed a counter notification related to this video and is continuing to investigate the matter.

COMPLAINT
9

2018.  This is catastrophic for a news outlet such as Complex, which attracts viewers and generates revenue by continuously updating its Channel with fresh content.  Thus, Complex has suffered and continues to suffer significant financial loss due to X17's misconduct.

44.     As a direct and proximate result of X17's conduct, YouTube also has disabled Complex's ability to edit any of the public-facing features of the Channel, including the channel profile and description, so that Complex cannot even redirect its Channel subscribers to another location to access Complex's news content and commentary.  Thus, Complex cannot reasonably mitigate the damages it has suffered and continues to suffer due to X17's misconduct.

45.     As a direct and proximate result of X17's conduct, YouTube also has threatened to terminate the Channel imminently.  Such termination would result in the loss of all 2.4 million of the Channel's subscribers, all 3,000 of Complex's videos hosted on the Channel — the vast majority of which are not accused of infringing any intellectual property rights whatsoever—and would preclude Complex from creating any new accounts on the YouTube platform, thus depriving Complex of the principal distribution platform for its news and commentary content.  Accordingly, Complex faces devastating, irreparable harm to its business due to X17's misconduct.

## FIRST CAUSE OF ACTION

### Misrepresentation Of Copyright Claims Under the DMCA
### (17 U.S.C. § 512(f))

46.     Complex repeats and re-alleges the allegations of Paragraphs 1 through 45, inclusive, as if fully set forth herein.

47.     Section 512(f) of the Copyright Act provides, in relevant part, that "any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as

the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ."

48.    On information and belief, X17 does not own the copyright in the LAX Footage or North West Footage; thus, when X17 filed its DMCA takedown notices, X17 violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that X17 owned or was authorized to act on behalf of the owner of an exclusive right infringed by the Kanye Deposition Report and North West Paparazzi Report.

49.    On information and belief, X17 intentionally ignored or failed to consider the fact that Complex's use of the LAX Clip in the Kanye Deposition Report, and the North West Clip in the North West Paparazzi Report, constitute fair use; thus, when X17 filed its DMCA takedown notices, X17 violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Kanye Deposition Report and North West Paparazzi Report are infringing.

50.    In reliance on X17's section 512(f) misrepresentations, YouTube removed Complex's videos from the Channel, disabled Complex's ability to upload new content to and edit existing content on the Channel, placed "copyright strikes" on Complex's YouTube account, threatened to terminate the CLA, and threatened to permanently terminate both the Channel and Complex's associated YouTube account.

51.    On information and belief, the misrepresentations contained in X17's DMCA takedown notices were material to YouTube's decision to remove the videos from the Channel.

52.    Complex has suffered damages as a result of X17's misrepresentations.

## SECOND CAUSE OF ACTION

### Declaration of Non-Infringement of Copyright

### (28 U.S.C. § 2201(a))

53.    Complex repeats and re-alleges the allegations of Paragraphs 1 through 52, inclusive, as if fully set forth herein.

54.     Complex is the copyright holder of the Kanye Deposition Report and the North West Paparazzi Report, which are the subjects of pending applications for copyright registration.

55.     X17 has claimed that Complex's use of the LAX Clip in the Kanye Deposition Report, and the North West Clip in the North West Paparazzi Report, infringe X17's copyrights, and has filed DMCA takedown notices with YouTube on that basis.

56.     Complex denies that either video is infringing and has filed counter notifications with YouTube on that basis.

57.     An actual, justiciable controversy has thus arisen between Complex and X17 as to whether Complex's use of the LAX Clip in the Kanye Deposition Report or the North West Clip in the North West Paparazzi Report infringe X17's copyrights.

58.     Complex seeks declaratory relief from this Court that neither the Kanye Deposition Report nor the North West Paparazzi Report infringe X17's copyrights.

## THIRD CAUSE OF ACTION

### Intentional Interference With Contractual Relations

### (California Common Law)

59.     Complex repeats and re-alleges the allegations of Paragraphs 1 through 58, inclusive, as if fully set forth herein.

60.     Complex and YouTube are parties to the CLA, a valid and enforceable contract wherein YouTube agrees to host Complex's content on the Channel and, in exchange, YouTube embeds advertisements in and around that content and shares with Complex a portion of the revenue received from that advertising.

61.     X17 knew or should have known of the CLA between Complex and YouTube at least by virtue of X17 having its own channel on YouTube and, on information and belief, also being a part of the YouTube Partner Program and having entered into its own CLA with YouTube.

62.     X17's conduct interfered with performance of the CLA by causing YouTube to take adverse action against Complex thereunder, including removing the videos at

issue from the Channel, disabling Complex's ability to upload new content to and edit existing content on the Channel, placing "copyright strikes" on Complex's YouTube account, threatening to terminate the CLA, and threatening to permanently terminate both the Channel and Complex's associated YouTube account.

63.     On information and belief, X17 intended to disrupt the performance of the CLA, or knew that disruption of performance was certain or substantially certain to occur at least by virtue of X17 having its own channel on YouTube and, on information and belief, also being aware of YouTube's "copyright strike" policy and the consequences users and channels face for accumulating three "copyright strikes."

64.     On information and belief, X17 knew or should have known about the financial harm its actions would inflict on Complex at least by virtue of X17 being a part of the YouTube Partner Program and having entered into its own CLA with YouTube and being aware of YouTube's stated position that copyright strikes "may affect [a user's] ability to monetize" their content.

65.     Complex was harmed as a result of X17's willful and wanton misconduct.

66.     X17's intentional, unreasonable, inappropriate, bad faith conduct was a substantial factor in causing Complex to suffer damages in an amount to be proven at trial.

67.     X17 and its officers, directors, agents, employees, and those acting in concert with it, acted with "fraud" within the meaning of California Civil Code section 3294(a) because X17 intentionally misrepresented, deceived, and concealed material facts known to X17, by filing DMCA takedown notices that falsely asserted that the Kanye Deposition Report and the North West Paparazzi Report were infringing, with the intention on the part of X17 of thereby depriving Complex of its property and legal rights and otherwise causing injury to Complex as set forth herein.

68.     X17 and its officers, directors, agents, employees, and those acting in concert with it, also acted with "oppression" within the meaning of California Civil Code section 3294(a) because X17's abuse of the DMCA takedown process and YouTube's

copyright strike system for the purpose of extorting Complex to pay X17 a license fee to which X17 is not legally entitled constitutes "despicable conduct" that has subjected Complex to cruel and unjust hardship in conscious disregard of Complex's rights.

69.     Accordingly, Complex is entitled to an award of exemplary or punitive damages against X17 in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Complex respectfully requests that this Court enter the following relief in favor of Complex and against X17 as a result of its wrongful conduct:

**AS TO THE FIRST CAUSE OF ACTION (Misrepresentation of Copyright Claims Under the DMCA):**

(a)     Pursuant to 17 U.S.C. § 512(f)(1), an award of Complex's actual damages, in an amount according to proof; and

(b)     Pursuant to 17 U.S.C. § 512(f)(1), an award of Complex's reasonable costs and attorneys' fees incurred to bring and prosecute this action.

**AS TO THE SECOND CAUSE OF ACTION (Declaratory Judgment of Non-Infringement of Copyright):**

(a)     Pursuant to 28 U.S.C. § 2201(a), a declaration that neither the Kanye Deposition Report nor the North West Paparazzi Report infringe any copyright held by X17.

**AS TO THE THIRD CAUSE OF ACTION (Intentional Interference with Contractual Relations):**

(a)     An injunction prohibiting X17, as well as its representatives, agents, employees, and anyone acting in concert with X17, from filing any further DMCA takedown notices before considering in good faith whether the content at issue constitutes protected fair use or that knowingly intentionally misrepresents that Complex's content is infringing;

(b)     An award of compensatory damages, in an amount according to proof; and

(c)     An award of exemplary or punitive damages in an amount according to proof.

**AS TO ALL CAUSES OF ACTION:**

(a)     Statutory interest;

(b)     Costs and expenses; and

(c)     Such other and further relief as the Court deems just and proper.


Dated: August 30, 2018                    FRANKFURT KURNIT KLEIN & SELZ P.C.

                                          BY:  */s/ Jeremy S. Goldman*
                                                 Jeremy S. Goldman (SBN 306943)
                                                 Mark R. Swiech (SBN 311601)
                                                 2029 Century Park East, Suite 1060
                                                 Los Angeles, California 90067
                                                 Tel: (310) 579-9600
                                                 Facsimile: (310) 579-9650
                                                 E-Mail: jgoldman@fkks.com
                                                         mswiech@fkks.com


                                          Attorneys for Plaintiff Complex Media, Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff Complex Media, Inc. hereby demands a trial by jury on all issues triable by a jury in the above-entitled action.

Dated: August 30, 2018           FRANKFURT KURNIT KLEIN & SELZ P.C.


BY:  */s/ Jeremy S. Goldman*
      Jeremy S. Goldman (SBN 306943)
      Mark R. Swiech (SBN 311601)
      2029 Century Park East, Suite 1060
      Los Angeles, California 90067
      Tel: (310) 579-9600
      Facsimile: (310) 579-9650
      E-Mail: jgoldman@fkks.com
              mswiech@fkks.com

Attorneys for Plaintiff Complex Media, Inc.