JEREMY S. GOLDMAN (SBN 306943)
MARK R. SWIECH (SBN 311601)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650
E-Mail:  jgoldman@fkks.com
           mswiech@fkks.com

Attorneys for Plaintiff COMPLEX MEDIA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| COMPLEX MEDIA, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>X17, INC., a California corporation,<br><br>Defendant. | Case No. 2:18-cv-07588-SJO-AGR<br><br>[HON. S. JAMES OTERO]<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF FOR:**<br><br>(1) **MISREPRESENTATION OF COPYRIGHT CLAIMS UNDER THE DMCA (17 U.S.C. § 512(f))**<br>(2) **DECLARATION OF NON-INFRINGEMENT OF COPYRIGHT**<br>(3) **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

# FIRST AMENDED COMPLAINT

Plaintiff Complex Media, Inc. hereby complains against defendant X17, Inc. as follows:

## NATURE OF THE ACTION

1. Complex is a media organization that publishes news reports through its website and online platforms such as YouTube. X17, which claims to own and license photographs and video footage of celebrities, accuses Complex of infringing X17's copyrights in certain materials used in Complex's news reports. Although Complex denies that it engaged in any infringing conduct, Complex was in the process of negotiating an amicable resolution of X17's claims when X17 stepped over the line.

2. Beginning on or about August 15, 2018, X17 began filing a slew of Digital Millennium Copyright Act takedown notices with YouTube, asserting that certain news reports posted to Complex's YouTube channel (the "Channel") infringe X17's copyrights. In filing these takedown notices, X17 knowingly materially misrepresented that it owned, or was authorized to act on behalf of the owner of, the rights to the materials used in the news reports. X17 further materially misrepresented the news reports were infringing because it knew or did not consider in good faith whether Complex's use of any such materials was fair use. X17 filed the DMCA notices in a bad faith attempt to exert pressure on Complex in the ongoing negotiation between the parties.

3. X17's misrepresentations resulted in YouTube placing "copyright strikes" on Complex's account, which froze Complex's ability to post new videos and edit existing content on its Channel. YouTube also threatened the permanent deactivation of Complex's YouTube account. These actions inflicted significant damage upon Complex and, unless stopped, threaten to cause catastrophic harm to Complex's business.

4. Through this lawsuit, Complex seeks redress pursuant to 17 U.S.C. § 512(f) for the damage caused by X17's malicious abuse of the DMCA takedown

process; a declaration that the videos at issue are non-infringing; damages for X17's tortious interference with Complex's contract with YouTube; and an injunction prohibiting X17 from filing further baseless DMCA takedown notices against Complex.

## PARTIES

5. Complex is a Delaware corporation with its principal place of business in New York, New York. Complex produces news content and commentary in written and video format and distributes its work via multiple distribution means, including the YouTube Channel.[1]

6. Upon information and belief, X17 is a California corporation with its principal place of business in Pacific Palisades, California.

## JURISDICTION AND VENUE

7. This Court has exclusive subject matter jurisdiction over the copyright and declaratory judgment aspects of this action under 28 U.S.C. §§ 1331 and 1338 because federal courts have exclusive jurisdiction over copyright cases, and because those claims are federal questions.

8. This Court has supplemental jurisdiction over the California state law claim under 28 U.S.C. § 1367(a) because it is so related to the claims asserted in the action under federal law that it forms part of the same case or controversy under Article III of the U.S. Constitution.

9. This Court has personal jurisdiction over X17 because, upon information and belief, X17 is incorporated in the State of California; X17's principal place of business is in Pacific Palisades, California; X17 transacts business in the State of California; X17 has engaged in actionable conduct within the State of California; and X17 maintains agents in the State of California. The causes of action stated herein arise out of X17's transactions and business within the State of California.

---

[1] *See Complex News*, YouTube.com, https://www.youtube.com/user/Complexmagazine.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1400(a) because this action arises under the federal Copyright Act and X17 and/or its agents reside(s) or may be found in this district. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because X17 resides and regularly conducts business in this district, and a substantial part of the events giving rise to this action occurred in this district.

**FACTS COMMON TO ALL CLAIMS**

*Complex*

11. Complex is a modern-day creator, producer, distributor, and publisher of news content and commentary. Complex reports not only on current national news events,[2] but also on trends in style, pop culture, music, sports, and sneakers, leading one commentator to recognize Complex as "a sort of next generation MTV News[.]"[3]

12. Complex's content includes written articles,[4] original shows,[5] and standalone videos covering, commenting on, and discussing current events in news and popular culture.

13. Complex distributes, publishes, and makes its news content and commentary available through a variety of means, including its website, "www.complex.com," third party platforms such as Roku and Apple TV, and online video streaming services such as YouTube.

---

[2] *See, e.g.*, Hannah Lifshutz, *Turkey Says Audio Recording of Khashoggi's Killing Was Given to the U.S.*, Complex.com (Nov. 10, 2018), https://www.complex.com/life/2018/11/turkey-says-audio-recording-khashoggi-killing-given-united-states.

[3] *See* Todd Spangler, *Complex Media Expands to Give Dudes Their Due*, Variety (Dec. 6, 2013 8:30 AM), https://variety.com/2013/biz/news/complex-media-expands-to-give-dudes-their-due-1200923355/.

[4] *See, e.g.*, Lifshutz, *supra* note 2.

[5] *See All Shows*, Complex.com, https://www.complex.com/video/.

14. Complex's YouTube Channel is one of the company's primary distribution platforms. The Channel has over 2.4 million subscribers, hosts over 12,000 of Complex's videos, and earns Complex hundreds of thousands of dollars per year.

### *YouTube Channels*

15. YouTube, owned by Google, Inc., is a video hosting platform where users upload and publish video content. YouTube generates revenue by embedding advertising in and around the videos hosted on its platform.

16. A YouTube "channel" is the "home page" for a specific YouTube account. All of the videos that a particular user uploads appear on that user's channel. Both individuals and businesses can create YouTube accounts and have their own channels.

17. YouTube allows users with successful YouTube channels to monetize their videos through YouTube's "Partner Program," which pays users a share of the advertising revenue generated through their videos. Channels with 1,000 subscribers and 4,000 "watch hours" in the preceding 12 months are eligible to participate in the Partner Program.[6] Once a channel is accepted, the user can begin to monetize the videos hosted on the channel by enabling the "Monetization" feature on the channel and accepting the terms of YouTube's Content License Agreement (the "CLA").

18. Complex is a party to YouTube's CLA and Complex's participation in the Partner Program through its YouTube Channel earns the company tens of thousands of dollars per month in revenue.

### *YouTube's "Copyright Strike" System*

19. To qualify for the safe harbor extended to Internet service providers under the DMCA, YouTube is required to adopt a repeat infringer policy.[7] YouTube's repeat infringer policy involves a system of "copyright strikes." Under this system, when a

---

[6] *See YouTube Partner Program Overview*, https://support.google.com/youtube/answer/72851#eligibility.

[7] 17 U.S.C. § 512(i)(1)(A).

copyright owner sends YouTube "a complete and valid legal request"—i.e., a DMCA takedown notice—asking YouTube to remove allegedly infringing content from its platform, YouTube places a "copyright strike" on the account of the allegedly infringing user and removes the target video from YouTube.[8]

20.  While YouTube describes a copyright strike as a "warning" to the user, YouTube also makes clear that accumulating copyright strikes "may affect [a user's] ability to monetize" the user's content.[9]

21.  A user who receives a copyright strike may attempt to resolve the strike by: (1) completing YouTube's "copyright school" and waiting 90 days for the strike to expire; (2) asking the copyright owner to retract the claim of copyright infringement; or (3) submitting a DMCA counter notification to the copyright owner.[10]

22.  If a user receives three copyright strikes, the user's YouTube account, "along with any associated channels, is subject to termination[,]" "all the videos uploaded to [the] account will be removed[,]" and the user "won't be able to create new channels."[11]

### *X17's Abuse Of The DMCA And YouTube's Copyright Strike System*

23.  Beginning on or about August 15, 2018, X17, itself an active user and channel operator on YouTube, commenced a concerted campaign designed to inflict maximal damage upon Complex by abusing the DMCA and YouTube's copyright strike system.

24.  In the course of approximately two weeks, while Complex and X17 were engaged in discussions to resolve certain contested infringement claims X17 asserted

---

[8] *See Copyright Strike Basics*, https://support.google.com/youtube/answer/2814000?hl=en.

[9] *Id.*

[10] *Id.*

[11] *Id.*

FIRST AMENDED COMPLAINT
5

against Complex, X17 filed at least six DMCA takedown notices targeted at videos Complex posted to its Channel. While Complex promptly disabled one of the videos upon receiving X17's notice, the other five videos are not infringing and X17 knows it.

25. In its initial complaint filed on August 30, 2018, Complex alleged that X17 did not own the rights in the photographs and videos it claimed Complex infringed at the time X17 filed the DMCA takedown notices. X17 then produced documents proving Complex's allegation. When X17 filed the DMCA notices, it did not have a subjective, good faith belief that Complex's use was infringing. Rather, X17 fired off the DMCA notices while knowing that X17 lacked the necessary ownership or authorization rights over the relevant materials and without considering fair use. The DMCA notices were a bad faith negotiation tactic to force Complex to pay an unreasonable "licensing fee," knowing full well that X17's flurry of takedown notices would cause Complex to "strike out" under YouTube's repeat infringer policy — a result that X17 understands would have devastating financial consequences for Complex.

### *X17 Knowingly Lacked Ownership Over The Allegedly Infringed Materials*

26. On September 12, 2018, X17 produced fifteen documents, each titled "Copyright Transfer Agreement," in which eight different photographers purportedly sold, assigned, transferred, and set over to X17 all rights, title, and interest in the photographs and/or videos at issue in X17's DMCA takedown notices. Critically, the earliest date any of these Copyright Transfer Agreements were executed was August 31, 2018 — one day *after* Complex filed this action and sixteen days *after* X17 filed its first DMCA takedown notice against Complex.

27. None of the Copyright Transfer Agreements Complex received on September 12, 2018 indicated that, prior to the agreements' effective dates, X17 was authorized to act on behalf of any of the eight named photographers with respect to making claims under the DMCA. In short, when X17 filed the DMCA takedown

notices, it neither owned, nor was authorized to act on behalf of, the owner of the rights in the materials X17 claims Complex infringed.

*Complex's Videos Are Classic Fair Use*

28. Moreover, none of the five videos targeted by X17 are infringing because Complex's use of any of X17's allegedly infringed material is fair use. However, two of Complex's videos are so quintessentially fair use that the only explanation for X17's issuance of the takedown notices related to those videos is that, prior to sending the DMCA takedown notices, X17 did not consider, either at all or in good faith, whether the videos made fair use of X17's allegedly infringed content.

*The Kanye Deposition Report*

29. On or about July 19, 2013, Kanye West got into a fight with a photographer named Daniel Ramos outside of Los Angeles International Airport. This incident was heavily photographed and videotaped and led to a lawsuit by Ramos in which West was eventually deposed.

30. Over a year after the LAX incident, on August 6, 2014, Complex posted a written article on its website reporting on a portion of the deposition transcript obtained by another news organization.[12] The article commented on the transcript's discussion of paparazzi tactics and embedded a video, hosted on Complex's YouTube Channel, titled "Sneak Peek of Kanye's Deposition from 2013 Paparazzi Case" (the "Kanye Deposition Report").

31. The Kanye Deposition Report is a two minute and twenty-one second news report that discusses and comments on West's fight at LAX, the lawsuit it spawned, and the deposition transcript.

---

[12] *See* Zach Frydenlund, *Here's a Sneak Peek of Kanye West's Deposition From His 2013 Paparazzi Case*, Complex.com (Aug. 6, 2014), https://www.complex.com/music/2014/08/heres-a-sneak-peek-of-kanye-wests-deposition-from-his-2013-paparazzi-case.

32. The Kanye Deposition Report includes a 13-second clip of West's altercation at LAX with Ramos (the "LAX Clip"). Upon information and belief, X17 claims Complex's use of the LAX Clip in the Kanye Deposition Report infringes X17's rights in the much longer (five minutes, eighteen seconds) video footage of the LAX incident hosted on X17's YouTube channel (the "LAX Footage").

33. The Kanye Deposition Report also offers context for the entire incident by comparing it to Britney Spears' reaction to Ramos' tactics during her own altercation with him years earlier, as well as other celebrities' behavior during their own depositions. Upon information and belief, X17 claims Complex's use of two photographs of Britney Spears during her encounter with Ramos (the "Spears Photographs") infringes X17's rights in those photographs.

34. Complex's use of both the LAX Clip and the Spears Photographs in the Kanye Deposition Report is classic fair use. The Kanye Deposition Report is news reporting and commentary. Complex's use of the LAX Clip is transformative because it provides an historical reference point for a news report not about the incident, but about the lawsuit and West's deposition. X17 had already published the LAX Footage, which is of a factual, not creative nature. Complex used only 13 seconds of the LAX Footage: just enough to conjure up the incident that was being referenced in the broader news report.

35. Complex's use of the Spears Photographs is similarly transformative and protected fair use. During an approximately 15-second sequence, Complex's reporter explains that, in his deposition, West said "I'm the smartest celebrity you ever . . . dealt with. I'm not Britney Spears." Complex's reporter continues: "This could be partially in reference to Britney Spears' run in with the same photographer back in 2007. After continually pursuing and photographing her, Spears took an umbrella to the photographer's SUV." The report then displays the Spears Photographs on the screen for a total of 2-3 seconds each in order to provide an historical reference point for West's comment.

36. Notwithstanding that Complex's limited use of the LAX Footage and the Britney Spears Photographs was protected fair use under section 107 of the Copyright Act, on or about August 16, 2018 — over four years after Complex published the Kanye Deposition Report — X17 filed a takedown notice against Complex with YouTube, claiming that the Kanye Deposition Report was infringing.

37. YouTube disabled access to the Kanye Deposition Report on the same day Complex received the DMCA takedown notice and notified Complex that its account had two copyright strikes.[13]

38. Despite representing to YouTube that the Kanye Deposition Report infringed X17's copyright, X17 did not sue Complex for copyright infringement after Complex filed a DMCA counter notification, and YouTube ultimately restored the video.

*The North West Paparazzi Report*

39. On October 28, 2015, X17 published video footage of North West, the infant daughter of Kanye West and Kim Kardashian, wearing a pink tutu and walking with her caretaker across a parking lot to her ballet class, surrounded by photographers (the "North West Footage"). North West says "I said no pictures" as she walks by, but the photographers continue to follow her and take pictures and video footage.

40. Later that day, Complex published on its YouTube Channel a one minute and twenty-nine second news report commenting on and criticizing the aggressive tactics of the photographers who followed North West (the "North West Paparazzi Report").

41. The North West Paparazzi Report includes a 12-second clip of the North West Footage (the "North West Clip"). Upon information and belief, X17 claims Complex's use of the North West Clip in the North West Paparazzi Report infringes X17's rights in the much longer (fifty seconds) North West Footage.

---

[13] Complex received its first strike on August 15, 2018 with respect to a video report on Justin Bieber that Complex promptly deleted.

42. However, Complex's use of the North West Clip in the North West Paparazzi Report is also classic fair use. The North West Paparazzi Report is news reporting and commentary. Complex's use of the North West Clip is highly transformative because the North West Paparazzi Report does not merely repackage the original North West Footage, but rather sheds new light on the material by providing *commentary* on, and *criticism* of, the North West Footage. After playing the North West Clip, Complex's reporter comments that while North West's reaction was "adorable," it was "also really kind of sad." The reporter continues: "A two year-old should not need to know how to say 'I said no pictures' and clearly those paps didn't listen considering there's a giant camera in her face. It's an interesting thing to think about. North West will literally never have a normal life." The reporter then comments about the trade-offs fame and fortune provide celebrities, asking "at what cost" do these things come. The reporter concludes the segment by asking viewers if they "think that North's inability to go anywhere as a toddler without photographers is just the cost of a luxurious life, or should we let the girl go to ballet class in peace?"

43. Moreover, X17 had already published the North West Footage, which is of a factual, not creative nature. Complex used only 12 seconds of the North West Footage: just enough to conjure up the incident on which Complex was commenting in the broader news report.

44. Notwithstanding that Complex's limited use of the North West Footage was protected fair use under section 107 of the Copyright Act, on or about August 22, 2018 — almost three years after Complex published the North West Paparazzi Report — X17 filed a takedown notice against Complex with YouTube, claiming that the North West Paparazzi Report was infringing.

45. YouTube disabled access to the North West Paparazzi Report on the same day Complex received the DMCA takedown notice and notified Complex that its account had four copyright strikes.[14]

46. Pursuant to YouTube's copyright strike policy, YouTube also notified Complex that, because Complex now had more than three copyright strikes, its "account [was] scheduled to be disabled in 7 days."

47. Despite representing to YouTube that the North West Paparazzi Report infringed X17's copyright, X17 did not sue Complex for copyright infringement after Complex filed a DMCA counter notification, and YouTube ultimately restored the video.

*Complex Has Been Damaged As A Result Of X17's Conduct*

48. As a direct and proximate result of X17's conduct, YouTube disabled Complex's ability to upload any new content to the Channel from at least August 16, 2018 until at least September 7, 2018. This was catastrophic for a news outlet such as Complex, which attracts viewers and generates revenue by continuously updating its Channel with fresh content. Thus, Complex has suffered significant financial loss due to X17's misconduct.

49. As a direct and proximate result of X17's conduct, YouTube also disabled Complex's ability to edit any of the public-facing features of the Channel from at least August 16, 2018 until at least September 7, 2018, including the channel profile and description, so that Complex could not even redirect its Channel subscribers to another location to access Complex's news content and commentary. Thus, Complex could not reasonably mitigate the damages it suffered due to X17's misconduct.

---

[14] Complex received a third copyright strike on August 16, 2018—the same day Complex received its second strike for the Kanye Deposition Report discussed *supra*—as a result of X17 filing another DMCA takedown notice with YouTube against Complex for another video. Complex filed a counter notification related to this video and is continuing to investigate the matter.

50. As a direct and proximate result of X17's conduct, YouTube also threatened to terminate the Channel. Such termination would result in the loss of all 2.4 million of the Channel's subscribers, all 12,000 of Complex's videos hosted on the Channel — the vast majority of which are not accused of infringing any intellectual property rights whatsoever — and would preclude Complex from creating any new accounts on the YouTube platform, thus depriving Complex of the principal distribution platform for its news and commentary content. Further, since bringing this action, X17 has threatened to file additional DMCA takedown notices against the Channel unless Complex agrees to "settle" with X17. Accordingly, Complex faces devastating, irreparable harm to its business due to X17's misconduct.

## FIRST CAUSE OF ACTION

### Misrepresentation Of Copyright Claims Under the DMCA

### (17 U.S.C. § 512(f))

51. Complex repeats and re-alleges the allegations of Paragraphs 1 through 50, inclusive, as if fully set forth herein.

52. Section 512(f) of the Copyright Act provides, in relevant part, that "any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ."

53. Upon information and belief, X17 did not own the copyright in the LAX Footage or the North West Footage when X17 filed its DMCA takedown notices with respect to the Kanye Deposition Report or the North West Paparazzi Report. Nor, upon information and belief, was X17 authorized to act on behalf of the owner(s) of an exclusive right in the LAX Footage or the North West Footage when X17 filed its DMCA takedown notices targeting the Kanye Deposition Report and the North West Paparazzi Report. Further, upon information and belief, X17 knew at the time it filed

the DMCA notices that it was not authorized to act on behalf of the owner of an exclusive right that was allegedly infringed by the Kanye Deposition Report or the North West Paparazzi Report.

54. Moreover, upon information and belief, X17 intentionally ignored or failed to consider at all or in good faith the fact that Complex's use of the LAX Clip and the Spears Photographs in the Kanye Deposition Report, and the North West Clip in the North West Paparazzi Report, constitute fair use.

55. Thus, when X17 filed its DMCA takedown notices, X17 violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Kanye Deposition Report and North West Paparazzi Report were infringing.

56. In reliance on X17's section 512(f) misrepresentations, YouTube removed Complex's videos from the Channel, disabled Complex's ability to upload new content to and edit existing content on the Channel, placed "copyright strikes" on Complex's YouTube account, threatened to terminate the CLA, and threatened to permanently terminate both the Channel and Complex's associated YouTube account.

57. Upon information and belief, the misrepresentations contained in X17's DMCA takedown notices were material to YouTube's decision to remove the Kanye Deposition Report and the North West Paparazzi Report from the Channel.

58. Complex has suffered damages as a result of X17's misrepresentations.

## SECOND CAUSE OF ACTION

### Declaration Of Non-Infringement Of Copyright

### (28 U.S.C. § 2201(a))

59. Complex repeats and re-alleges the allegations of Paragraphs 1 through 58, inclusive, as if fully set forth herein.

60. Complex is the copyright holder of the Kanye Deposition Report and the North West Paparazzi Report, which are the subjects of pending applications for copyright registration.

61. Upon information and belief, X17 has claimed that Complex's use of the LAX Clip and/or the Spears Photographs in the Kanye Deposition Report, and the North West Clip in the North West Paparazzi Report, infringe X17's copyrights, and has filed DMCA takedown notices with YouTube on that basis.

62. Complex denies that either video is infringing and has filed counter notifications with YouTube on that basis.

63. An actual, justiciable controversy has thus arisen between Complex and X17 as to whether Complex's use of the LAX Clip and the Spears Photographs in the Kanye Deposition Report or the North West Clip in the North West Paparazzi Report infringe X17's copyrights.

64. Complex seeks declaratory relief from this Court that neither the Kanye Deposition Report nor the North West Paparazzi Report infringe X17's copyrights.

## THIRD CAUSE OF ACTION

**Intentional Interference With Contractual Relations**

**(California Common Law)**

65. Complex repeats and re-alleges the allegations of Paragraphs 1 through 64, inclusive, as if fully set forth herein.

66. Complex and YouTube are parties to the CLA, a valid and enforceable contract wherein YouTube agrees to host Complex's content on the Channel and, in exchange, YouTube embeds advertisements in and around that content and shares with Complex a portion of the revenue received from that advertising.

67. X17 knew or should have known of the CLA between Complex and YouTube at least by virtue of X17 having its own channel on YouTube and, upon information and belief, also being a part of the YouTube Partner Program and having entered into its own CLA with YouTube.

68. X17's conduct interfered with performance of the CLA by causing YouTube to take adverse action against Complex thereunder, including removing the videos at issue from the Channel, disabling Complex's ability to upload new content to

and edit existing content on the Channel, placing "copyright strikes" on Complex's YouTube account, threatening to terminate the CLA, and threatening to permanently terminate both the Channel and Complex's associated YouTube account.

69.  Upon information and belief, X17 intended to disrupt the performance of the CLA, or knew that disruption of performance was certain or substantially certain to occur at least by virtue of X17 having its own channel on YouTube and, upon information and belief, also being aware of YouTube's "copyright strike" policy and the consequences users and channels face for accumulating three "copyright strikes."

70.  Upon information and belief, X17 knew or should have known about the financial harm its actions would inflict on Complex at least by virtue of X17 being a part of the YouTube Partner Program and having entered into its own CLA with YouTube and being aware of YouTube's stated position that copyright strikes "may affect [a user's] ability to monetize" their content.

71.  Complex was harmed as a result of X17's willful and wanton misconduct.

72.  X17's intentional, unreasonable, inappropriate, bad faith conduct was a substantial factor in causing Complex to suffer damages in an amount to be proven at trial.

73.  X17 and its officers, directors, agents, employees, and those acting in concert with it, acted with "fraud" within the meaning of California Civil Code section 3294(a) because X17 intentionally misrepresented, deceived, and concealed material facts known to X17 by filing DMCA takedown notices that falsely asserted that X17 owned or, upon information and belief, was authorized to act on behalf of the owner of an exclusive right infringed by the Kanye Deposition Report (with respect to the LAX Clip) and the North West Paparazzi Report, with the intention on the part of X17 of thereby depriving Complex of its property and legal rights and otherwise causing injury to Complex as set forth herein

74.  X17 and its officers, directors, agents, employees, and those acting in concert with it, further acted with "fraud" within the meaning of California Civil Code

section 3294(a) because X17 intentionally misrepresented, deceived, and concealed material facts known to X17 by filing DMCA takedown notices that falsely asserted that the Kanye Deposition Report and the North West Paparazzi Report were infringing, with the intention on the part of X17 of thereby depriving Complex of its property and legal rights and otherwise causing injury to Complex as set forth herein.

75. X17 and its officers, directors, agents, employees, and those acting in concert with it, also acted with "oppression" within the meaning of California Civil Code section 3294(a) because X17's abuse of the DMCA takedown process and YouTube's copyright strike system for the purpose of extorting Complex to pay X17 a license fee to which X17 is not legally entitled constitutes "despicable conduct" that has subjected Complex to cruel and unjust hardship in conscious disregard of Complex's rights.

76. Accordingly, Complex is entitled to an award of exemplary or punitive damages against X17 in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Complex respectfully requests that this Court enter the following relief in favor of Complex and against X17 as a result of X17's wrongful conduct:

**AS TO THE FIRST CAUSE OF ACTION (Misrepresentation of Copyright Claims Under the DMCA):**

(a) Pursuant to 17 U.S.C. § 512(f)(1), an award of Complex's actual damages, in an amount according to proof; and

(b) Pursuant to 17 U.S.C. § 512(f)(1), an award of Complex's reasonable costs and attorneys' fees incurred to bring and prosecute this action.

**AS TO THE SECOND CAUSE OF ACTION (Declaratory Judgment of Non-Infringement of Copyright):**

(a) Pursuant to 28 U.S.C. § 2201(a), a declaration that neither the Kanye Deposition Report nor the North West Paparazzi Report infringe any copyright held by X17.

**AS TO THE THIRD CAUSE OF ACTION (Intentional Interference with Contractual Relations):**

    (a)    An injunction prohibiting X17, as well as its representatives, agents, employees, and anyone acting in concert with X17, from filing any further DMCA takedown notices against Complex before considering in good faith whether the content at issue constitutes protected fair use or that knowingly intentionally misrepresents that Complex's content is infringing;

    (b)    An award of compensatory damages, in an amount according to proof; and

    (c)    An award of exemplary or punitive damages in an amount according to proof.

**AS TO ALL CAUSES OF ACTION:**

    (a)    Statutory interest;

    (b)    Costs and expenses; and

    (c)    Such other and further relief as the Court deems just and proper.

Dated: November 14, 2018        FRANKFURT KURNIT KLEIN & SELZ P.C.

BY:  */s/ Jeremy S. Goldman*
       Jeremy S. Goldman (SBN 306943)
       Mark R. Swiech (SBN 311601)
       2029 Century Park East, Suite 1060
       Los Angeles, California 90067
       Tel: (310) 579-9600
       Facsimile: (310) 579-9650
       E-Mail: jgoldman@fkks.com
               mswiech@fkks.com

Attorneys for Plaintiff Complex Media, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff Complex Media, Inc. hereby demands a trial by jury on all issues triable by a jury in the above-entitled action.

Dated: November 14, 2018         FRANKFURT KURNIT KLEIN & SELZ P.C.

BY: */s/ Jeremy S. Goldman*
Jeremy S. Goldman (SBN 306943)
Mark R. Swiech (SBN 311601)
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Tel: (310) 579-9600
Facsimile: (310) 579-9650
E-Mail: jgoldman@fkks.com
mswiech@fkks.com

Attorneys for Plaintiff Complex Media, Inc.

18