JEREMY S. GOLDMAN (SBN 306943)
jgoldman@fkks.com
JESSICA R. MEDINA (SBN 302236)
jmedina@fkks.com
FRANKFURT KURNIT KLEIN & SELZ, P.C.
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (347) 438-2156

Attorneys for Plaintiff COMPLEX MEDIA, INC.

John Tehranian (Bar No. 211616)
Email: jtehranian@onellp.com
Jenny S. Kim (Bar No. 282562)
Email: jkim@onellp.com
ONE LLP
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

Attorneys for Defendant,
X17, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMPLEX MEDIA, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>X17, INC., a California corporation,<br><br>Defendant. | Case No. 2:18-cv-07588-SJO-AGR<br>[HON. S. JAMES OTERO]<br><br>**JOINT RULE 26(F) REPORT**<br><br>Scheduling Conference: May 13, 2019<br>Time: 8:30 a.m.<br>Courtroom: 10C |

Plaintiff Complex Media, Inc. and ("Complex") and Defendant X17, Inc. ("X17") (Complex and X17 may collectively be referred to herein as the "Parties") hereby submit the following Joint Rule 26(f) Report:

## I. RULE 26(F) CONFERENCE

On April 22, 2019, the Parties' respective counsel conducted their Rule 26(f) conference. During the telephonic meeting, counsel discussed the matters set forth in Rule 26, the Local Rules, and this Court's Order Setting Scheduling Conference (Doc. # 29).

## II. JOINT REPORT

### A. **Nature and Basis Of Claims And Defenses.**

Plaintiff's Statement

Complex creates, produces, distributes, and publishes news content and commentary through a variety of means, including YouTube, where Complex operates the "Complex News" Channel (the "Channel"). The Channel hosts over 12,000 videos and is one of Complex's primary content distribution platforms. Complex earns tens of thousands of dollars per month in revenue via its contract with YouTube.

X17, which claims to own and license photographs and video footage of celebrities, accuses Complex of infringing X17's copyrights in certain materials used in Complex's news reports. Although Complex denies that it engaged in any infringing conduct, Complex was in the process of negotiating an amicable resolution of X17's claims when X17 stepped over the line.

On or about August 15, 2018, X17 began submitting to YouTube successive takedown notices under the Digital Millennium Copyright Act ("DMCA"). The notices asserted that certain video news reports Complex posted to its Channel infringed X17's copyrights, despite the fact that several of the videos made fair use of the content X17 claimed to own. In filing these takedown notices, X17 knowingly materially misrepresented that it owned, or was authorized to act on behalf of the

owner of, the rights to the materials used in the news reports. X17 further materially misrepresented that Complex's use of the materials claimed by X17 was infringing because X17 failed to consider, either at all or in good faith, whether Complex's use of any such materials was fair use.

X17's successive filing of takedown notices was in bad faith. YouTube responded by placing more than three "copyright strikes" on Complex's account, preventing Complex from editing the Channel, "freezing" the Channel, and threatening to terminate the Channel. Complex faced immediate catastrophic and irreparable harm from X17's willful manipulation of YouTube's copyright strike policy. X17, itself an active user of YouTube, knew full well the consequences its actions would have on Complex and threatened to file additional DMCA notices unless Complex agreed to "settle" with X17.

Through this lawsuit, Complex seeks redress pursuant to 17 U.S.C. § 512(f) for the damage caused by X17's malicious abuse of the DMCA takedown process; a declaration that the videos at issue are non-infringing; and an injunction prohibiting X17 from filing further baseless DMCA takedown notices against Complex.

Defendant's Statement

Celebrity content, celebrity gossip and celebrity images are among the most valued internet commodities to generate traffic to websites and social media channels. X17, a prominent celebrity photography and videography agency, is in the market of licensing images for significant consideration to the world's leading websites, newspapers, television programs and magazines.

As alleged in the Complaint, Complex distributes, publishes, and monetizes online news content, including on the video streaming service YouTube. Complex's YouTube channel "has over 2.4 million subscribers, hosts over 12,000 of Complex's videos, and earns Complex hundreds of thousands of dollars per year." (Compl. ¶ 14.) Yet rather than paying for its video and image content, Complex willfully reproduced, publicly distributed and publicly displayed certain original photographs of celebrities

belonging to X17. Complex's infringement took place without permission, consent, or license and constitutes a willful pattern and practice of knowingly exploiting valuable copyrighted content for commercial gain without permission from, or payment to, rightsholder.

X17 denies Complex's claims alleged in the operative complaint, which is the original Complaint (Dkt. No. 1) with the third cause of action for intentional interference with contractual relations stricken (Dkt. No. 30). Specifically, X17 denies the first cause of action for misrepresentation of copyright claims under the DMCA, 17 U.S.C. § 512(f), because, among other things, X17 did not make any misrepresentations and, in any event, lacked the subjective bad-faith *mens rea* to state a cognizable claim under § 512(f). X17 owns all relevant rights to the photographs that Complex exploited without permission and X17 made appropriate use of the DMCA takedown process, and properly engaged in any and all relevant fair-use considerations when it sent its notifications to YouTube.

X17 further denies Complex's second cause of action for declaratory judgment of non-infringement of X17's copyrights. The gravamen of Complex's position is that its publications were "quintessentially fair use" because they were part of news commentary. (Compl. ¶ 27.) But this argument has no merit, and the Ninth Circuit has repeatedly held that non-transformative news-related uses for commercial purposes are **not** fair use. *See, e.g.*, *L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119 (9th Cir. 1997) (rejecting fair use defense for a journalistic use of news-worth imagery (video footage of the beating of Reginald Denny) for the public interest and reporting purposes); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (rejecting fair use defense by news magazine for unauthorized use of celebrity photographs despite news-reporting and commentary purpose of use).

Accordingly, in addition to denying Complex's claims, X17 anticipates it will assert affirmative defenses and counterclaims against Complex, including counterclaims for copyright infringement and for misrepresentation in violation of 17

U.S.C. § 512(f). Complex willfully infringed X17's copyrights when it made unauthorized use of X17's copyrighted works for commercial, and it knowingly and in bad faith materially misrepresented that its materials were not infringing in its DMCA counter-notices.

The parties have continued to engage in settlement discussions in a good faith attempt to resolve the case promptly. Despite the parties' good faith efforts, no agreement has been reached.

**B.     Discovery Plan/Initial Disclosures/Discovery Cutoff**

The Parties intend to serve standard written discovery including requests for production of documents, requests for admissions, and interrogatories.  The Parties do not anticipate the need for the Court's order to impose limitations or changes to the rules regarding discovery.  In addition, the Parties do not believe that discovery should be completed in phases or be limited in advance to particular issues.  The Parties stipulate to exchange initial disclosures two weeks after X17 files its answer (current response date is May 15, 2019 + 14 days = May 29, 2019).  Based on a proposed trial date of May 19, 2020, the Parties propose a discovery cut-off date of February 19, 2010 (90 days before trial).

Subjects of Discovery -- Plaintiff's View

Complex anticipates that discovery may be needed on the facts and circumstances regarding:

- X17's alleged copyright ownership, or authorization to file takedown notices on behalf of the copyright owners, of the allegedly infringed works;

- X17's filing of the takedown notices against Complex, including its consideration of fair use (or lack thereof);

- X17's filing of takedown notices against parties other than Complex;

- Complex's damages as a result of X17's filing of the takedown notices;

- Complex's use of the allegedly infringed materials.

Subjects of Discovery – Defendant's View

X17 anticipates taking discovery on all issues relating to Complex's claims asserted in the Complaint and X17's defenses to be asserted in the Answer and any counterclaims by X17, including at least the following:

- Whether X17 owns valid and enforceable rights in its asserted copyrights;
- Whether Complex has infringed X17's copyrighted works and the willfulness thereof;
- Whether X17's claim for copyright infringement may be barred by Complex's affirmative defense of fair use;
- Whether X17 violated 17 U.S.C. § 512(f);
- Whether Complex violated 17 U.S.C. § 512(f);
- The amount of damages to which X17 is entitled if it prevails on any of its claims;
- The amount of damages to which Complex is entitled if it prevails on its DMCA claim;
- Whether X17 is entitled to injunctive relief; and
- Whether any party is entitled to attorneys' fees and/or costs

**C.    Discovery of Electronically Stored Information**

The Parties do not anticipate any issues regarding access to or production of electronically stored information. Whenever practicable, the Parties agree to produce ESI with standard metadata fields intact, either through the use of a "load file" or by producing ESI in native format.

**D.    Listing and Proposed Schedule of Law and Motion Matters/Dispositive Motions**

The Parties each anticipate that they will file a motion for summary judgment, partial summary judgment, or summary adjudication. Based on a proposed trial date of May 19, 2020, the Parties propose a last date for hearing motions as March 20, 2020.

**E.   Efforts Made to Settle or Resolve the Case**

The Parties are presently engaged in good faith settlement discussions, including an exchange of offers.  The Parties have met and conferred on ADR and opt to use private mediation (ADR Procedure No. 3).  The Parties propose that the mediation be completed no later than July 29, 2019.

**F.   Estimated Length of Trial and Proposed Dates for the Final Pretrial Conference and for Trial**

The Parties estimate a three to five day jury trial and propose the following schedule:

Pretrial Conference:		May 11, 2020
Trial:				May 19, 2020

**G.   Other Parties Likely to Be Added/Amended Pleadings**

X17 has not yet answered or asserted any counterclaim.  However, based on the present state of the pleadings, the Parties do not currently anticipate adding any additional parties or amending their pleadings.

**H.   Other Issues Affecting the State or Management of the Case**

**Service:**  The Parties agree to accept service of documents on counsel of record by e-mail pursuant to Rule 5(b)(2)(E).

**Complex Litigation:**  The Parties agree that this case is not complex and the Manual on Complex Litigation need not be utilized.

**Unusual Legal Issues:**  Based on the current state of the pleadings, the Parties are not aware of any unusual legal issues presented by the case at this time.

**Privileged Materials:**  The Parties agree that any materials protected from discovery by the attorney-client privilege or the work product doctrine and created after the commencement of this litigation and solely for the purposes of this litigation, do not need to be identified on a log of withheld documents under Rule 26(b)(5).

**Protective Order:** The Parties have agreed to negotiate a protective order,

based upon Magistrate Rosenberg's form, to be submitted to the Court by stipulation. The parties are not otherwise seeking any additional orders from the Court under Rules 16(b) or (c), or 26(c).

## I. Severance, Bifurcation, or Other Ordering of Proof

At this time, the Parties do not anticipate the need for the severance of any issues, bifurcation of the trial, and do not recommend any changes to the order of proof.

DATED: April 29, 2019         COMPLEX MEDIA, INC.

                              By: */s/ Jessica R. Medina*
                                  Jeremy S. Goldman
                                  Jessica R. Medina
                                  Attorneys for Plaintiff Complex Media, Inc.

DATED: April 29, 2019         X17 INC.

                              By: */s/ Jenny S. Kim*
                                  Jenny S. Kim
                                  John Tehranian
                                  Attorneys for Defendant X17, Inc.

### ATTESTATION

Pursuant to Central District Local Rule 5-4.3.4(a)(2)(i), the filer of this document hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

DATED: April 29, 2019         By: */s/ Jessica R. Medina*
                                  Jeremy S. Goldman
                                  Jessica R. Medina
                                  Attorneys for Plaintiff Complex Media, Inc.